Adam現在在拍攝utzs 2017 Sam once version  reiblesouwuwuwuwuwuwuwuwuwuwuwuwuwuwuwuwuwuwuwu  Adam only bought one car in 2018  All the cars found are related federal claims Govern employee case and a veterans appeal from the Court of Appeals for veterans claims Which will not be argued it being submitted on the briefs so our first case is Auto technology versus just about everyone Cmw et al 0 6 10 13 Mr. Organized here all this paper. Mr. Baniak And as for CK's issue that rate raises as far as the denial of Motion I'm going to say that score There was no use of discretion by the trial court with regard to that motion based on the Intel case Which we think is controlling as well as on the material issues of fact that were presented with regard to That so-called cross appeal, which we don't believe is a cross appeal Turning down to the written description This case is not gentry gallery. We do not have a situation This instance where this was the only Possible location for these sensors is set forth in the patent and the set forth in the intrinsic record It was not absolutely unambiguous on this point when you look at the specification Let me just ask you about that point if we were hypothetically to construe the spec as requiring a sensor on the side door Is there a way to construe the claim to save the patent? With respect to Construing it on the side door. Yes I suppose you could save the patent put it in those terms if you said it is to be so limited to just the side Door you only suppose? Well, your honor. I don't think that that is a proper construction. I go to the at least one aspect and I believe this district Court was Incorrect and what it said and how it construed at least one up in this case. It's not the situation In the super guy case we here see in the intrinsic record very very clearly That the applicants defined what it meant what they meant when they said at least one up it was in the alternative It was either or and that's what they said in the specimen That's what I think as I understand the other side agreed doesn't disagree with you Um, the only difference is that they are saying that therefore it feels on WD Because the spec requires that it be on the side door and it doesn't allow For one sensor that is not one sensor that is between the wheels but not on the side door I might at least understand what you understand the play here to be between the parties. Yes, your honor I think the joint defense do agree with us on that particular point, but that's where the district court went wrong That's where the district court failed to appreciate the part of the specification Which specifically set forth that these sensors operate independently I don't know that the court appreciated the fact that being set up in parallel and Shown it as shown in figure four and the related text indicated and has set forth in the text any one of those sensors But look wouldn't be actuated claim set up a claim says at least one of a side door and a side Side between the centers of the front and rear wheels and isn't that supported at column three line 44 et al Etc at SEC which says to ensure the effectiveness is setting sensing It is reasonable that more than one sensor be used. For example, one would be located just before the a pillar and one before the B pillar, which is between the wheels and spec also says There must be it is essential That there be a side door structure Sensor in the side door structure. Isn't that supportive of the claim construction that I just read off? Construction if you look further at the objects of the invention for example And then you go into the detailed specification what you see there is that is a one That is one preferred way to do it putting three sensors in there in the objects of the invention If the inventors call out that you can have two sensors not three You put two sensors as one objective and they don't say where those sensors are necessarily located It could be at the a pillar could be on the C pillar in those cases. What's key here to us? Here is that even though the word essential was used in the context of The background of the invention in regard to these crash sensors. There is an embodiment There is an embodiment set forth in here where a single sensor a single sensor will activate this mechanism And that's where we get to the claim language. And where is that sensor? That sensor can be in any one of those three locations which are exemplary or anywhere And it doesn't have to be one in the side door? No, it does not have to be one in the side door. This specification is a mess then. Well, your honor, unfortunately we are dealing here with a legal instrument and legal writing Insofar as a patent is concerned is considered to be one of the most difficult jobs. I know I used to do it. Right. But it's not that difficult when you use plain language using the word essential Why doesn't that characterize all the interpretation of the claims? Because. And my interpretation in fact would support your position which somehow you're pulling away from. No, I'm not pulling away from the position at all, your honor. I'm saying this specification does not require that a sensor must be located in the door In order to meet the limitations of these claims. That is because we set forth an example of where it isn't necessarily located in the door. And because, and I'm going to come back to the issue of essential here in a moment And because the applicant said in the contemporaneous file history Our concept is broader, broader than just locating it in the door. Because we're dealing with physics and we're dealing with common sense. In other words, we should ignore the sentence which says the opposite. No, I don't think we should. However, the case law would support if there's inconsistency here then we can't be clearly unambiguous. It is not a clear disavowal. Does the claim require that the sensor be mounted at all? Yes, and there is a mount. What's it say? Means for? Mounting. That's correct, your honor. There is a means for mounting. So there has to be a means for mounting. Correct. And therefore there is a place to mount it. And that's what the applicants call out. This is the place. These are the places where it can be mounted. And again, file history makes very clear what the applicants intended. By the use of that language, they did not want to be unduly restricted. Back to the issue. Where's the example of one sensor not in the door? You look at figure 4, your honor, and it shows a number of sensors. And then you go to the related text. You look at figure 4, but that shows in both locations. It does. Two of them are on the door and one's on the side panel. That's correct. Is that one sensor not in the door? That sensor is shown in the door. But we need to look at the related text. And the related text doesn't say that that sensor must be located in the door. Where's the related text? I'm sorry. The related text is located in the specification at column 8, beginning at line 18. Where it says these places for these three sensors could trigger in a crash any one of those sensors going off. Any one of those sensors will do the job, not the one in the door. And when we go back to the use of this word essential, which I'm sorry. I can't think of how to try. I'm on column 8. And I'm having a hard time finding what you just characterized as these locations. These locations include the center of the door, plus in front of the A pillar, and just behind, as shown in the figure. These three sensors are electrically wired in parallel. If any of these three sensors triggers in a side crash, then the protection apparatus is initiated. Well, that tells what happens. That isn't contrary to the statement that it is essential that one of them be in the side door. And that's where the district court, I think, had a flavor, had the understanding of what the applicants were talking about in the background of the invention. When they asked opposing counsel, isn't this a situation where we have to look at what was being said in the context of column 4? Let me ask you about electronic sensors. There's no question there's a written description of that. But is it enabled? You just pull it off the shelf and put it in and everyone knows what an electronic sensor is? Or, recognizing that there's a lot of written description here, a lot of enablement material on mechanical sensor, shouldn't there have been an equivalent, or at least more disclosure regarding the electronic sensor? First, we look at the case law. The case law, I think, here is controlling with regard to spectrophysics and in vitrogen. Spectrophysics makes very clear, if I enable one embodiment of this means, then I have met the scope of the invention. We enable one embodiment without question, admittedly, that's the mechanical sensor. Is that a concession that for the enablement disclosure, for the electronic sensor disclosure to be enabling, there needed to be more? No, Your Honor, it's not. Because we submitted evidence, and this is all on summary judgment, let's remember. Summary judgment was granted on written description. Summary judgment was granted on enablement. So we are dealing here with material issues of fact that have to be addressed, not just the question of is it the law? I think the law prevails in this particular instance for ETI.  It isn't obvious in light of Marsh, Your Honor, because... 1927, you have an explicit reference to side impacts. And what happened since 1927, Your Honor? Nothing. Nothing in the way of this kind of invention. Even the Schmidt reference that comes about in 1966. Nothing happens. Long felt need is something that we submitted evidence on in the Dix Declaration. It was before the court. Long felt need and the commercial success of these inventions. It was totally unrecognized what Marsh did. Marsh did not in any way represent an obvious way to do this. Marsh is located at the bottom of the car, for example. And Marsh is unprotected... And drops the curtain, a chain curtain to protect against glass shattering. But other than that difference, haven't we got something doing exactly the same thing or something very close to the same thing? No, not at all. I don't think it has... What's the difference? The difference is that, first of all, we have a limitation in the claims that's directed to the housing that goes around us. That housing also operates and cooperates with the particular inertial accelerometer that we're dealing with. Why is that incredibly obvious? I mean, to put a housing around it? Well, Your Honor... To make the detection easily... the detection system easily mounted and easily cared for? No. It was... The record before the court showed that it wasn't incredibly obvious to do that. That's why the court denied some of your judgment with respect to obviousness. Did I... I was going to say, did I miss something or was obviousness not decided and not appealed? It's not even unappealable. In this particular instance, I'm trying to answer Judge Rader's question on that. So that issue isn't before us in this case. But I wanted to respond to what you said, Your Honor. If we affirm unenablement, will you have some claims that are still left on the written description? Do we have to reach the written description issue? No. I think if you affirm unenablement, then I think we also have an affirmance required on written description in this case. We have a written description. That's why... No, no, no. I'm saying affirming the district court. In other words, you lose the patent based on enablement. No, no. So if we affirm the district court, in other words, the claims that are alleged are not enabled, do we have to reach the written description? I tried to line up which claims were at issue on which issue. It seems like there might be a few that are still open on WD, even if we affirm unenablement, but I'm not entirely clear. I don't believe that that's the case, Your Honor. I think an affirmance on either ground ends up with these claims all going down. But again, we're still dealing with the question here that is related to what standard are we applying? What material issues of fact are presented to the district court? What does the district court then do with those material issues of fact? Mr. Baniak, Mr. Baniak, my censor does tell me. It's not on the side, but it's in front of me. It tells me that you're into your bottle. We'll save you a full three minutes. Mr. Gallo, you are sharing time and you're going to take 12 minutes. Correct, Your Honor. When your red light goes on, you're trading on your friend there. I will stop. Okay. Thank you, Your Honor. May it please the court, Your Honor, for the joint defendants, Delphi and GM, stated differently. I'm speaking on behalf of everyone other than CalSonic and Nissan. And I will address the two arguments, the written description and the enablement. How can this be a written description problem when you've got Figure 4 showing a side panel censor, when you've got Column 5 describing a combination with one censor on the door and Column 8 again describing multiple locations and there's description all over the place and it's obvious to one of skill in the art where you might put these things even when they're pictured and then Wertheim goes along and says as well use a flexible approach to this. Why aren't you using obviousness which is where this thing ought to be invalidated? Let me respond to that first. Why aren't we doing obviousness? You've got a lot to respond to there, about six things. I think I can respond to those, Your Honor. First, we did argue obviousness in the lower court and the district court according to my recollection came very close to invalidating on obviousness and did not invalidate because of the question of whether housing was obvious. Obviously, we disagree with that. We didn't try to appeal that ruling because we won on written description and we won on the lack of enablement. Now, why is it that it's not described? I would make three points, Your Honor. We start with the proposition that the language could not be more unequivocal the language here is stronger than the language of Gentry Gallery when the claim when the specification says it must be in the door must to be effective and being in the door is essential. Figure 4 does not change that. The district court specifically addressed the figure 4 point and the district court said there's nothing it says nothing nothing of a single independent censor. The description of figure 4 is three censors and it appears in the Gentry Gallery you didn't have a picture showing the embodiment which is located somewhere other than in the door. But the textual language that accompanies that picture explains that there are three censors it's at column A lines 16 to 21. Yeah, but as Mr. Baniak pointed out that paragraph that you're referring to concludes if any one of these three censors triggers. Which doesn't mean your honor and it talks about the locations include it's talking about any of the locations it says one located in the door plus another in the A pillar and another behind the B pillar it talks about them in a conjunctively not independently and then your honor Judge Grossman it says that if any one of them they can trigger independently that doesn't go to the question of whether one located in the door is essential. In other words the fact that the one in the A pillar can trigger independently or the one in the B pillar can trigger independently doesn't mean that the one in the door isn't still an essential device and here's I think the most important point Well assuming it's an essential device the claim permits at least one in the side door that's essential and also from side between the centers of the wheels and why isn't that supported by the specification at column 3 Because your honor it specifically says that the one in the door is essential the claim construction that ATI asked for and received said capable of in the door and at locations along the side and so it still is essential that it be in the door so the second half of that claim construction It doesn't say essential it says to be effective you're talking about but you don't have to have an effective invention do you you can have an invention that is efficient and that may not even be effective so even on even if we over read the one statement that you're placing your whole appeal on the fact that they said must instead of should or something even that is further amended by the effectiveness language which isn't essential for otherwise it doesn't satisfy 101 exactly your honor and if I just there's one very important point here that I need to make about the question of how you read figure 4 together with the essential and the must language which is that the expert opinion that was put in place by ATI in this case did not even attempt to reconcile figure 4 with the must and the essential language in other words one skilled in the art Dr. Dix came in and he said to the district court look at figure 4 but what the district court said was conspicuously absent from Dr. Dix opinion his affidavit was any attempt to reconcile figure 4 with the language which says it must and it is essential so the ATI did not create a genuine issue of fact in the lower court in other words they had the opportunity to bring in someone skilled in the art and say I can read figure 4 consistently with the essential and the must language and they did not do that and it was proper for the district court in light of the must language and the essential language which it is hard to imagine how you could use more unequivocal terms than essential and must and then in the absence of any affidavit of one skilled in the art that actually attempted to reconcile those positions the claim itself only requires that it be capable of being mounted why are we spending so much energy here on where they are actually located location language isn't even in the claim is it your honor I don't believe that our argument on written description requires the court to conclude that it must actually be mounted I think the issue of actual mounting it just says there is no mounting requirement at all is there well for the written description argument the point I want to make is that we rest on the claim construction capable of being mounted they are claiming a housing and a feature they are not claiming where it is which is why it's probably obvious but it's not a question of location having anything to do with the claim is it it's just capable of being mounted there's two things the claim as construed by the court said capable of being mounted in the door or between the centers of the woods the judge later said it also requires actual mounting and I don't hear Mr. Baniak to be disputing that fact so your honor I don't think it is true to say that it is just an academic question of whether it's capable of being mounted what about the electronic sensor is that off the shelf or does that need real enablement description no it absolutely needs real enablement description and once again I go to the record at summary judgment and the fact that there was no evidence put into the record by ATI to suggest that it was routine and that one of skill in the art could use something off the shelf you have a figure 10 don't you what is that figure 10 is that response why wouldn't one of skill in the art electronics art be able to look at that response curve and say that's easy let me tell you what the lower court record is on that Dr. Hensler who was our expert put in an affidavit that said to try to program and to create an algorithm and a computer program in order to process that signal would require digital processing and a great deal of experimentation that there was nothing available on the market that could do that and it would take an enormous amount of time there was no response on figure 10 from ATI's expert so the district court was submitted with uncontested facts on figure 10 your honor there's no dispute in the record on figure 10 in the lower court but more generally in response to paragraphs 10 to 19 of his declaration which went through in considerable detail and explained I've got 12 minutes so I'm not running out of time I hope I have some free hours in this time a detailed explanation of exactly the fact that digital programming that would be required would exceed the capabilities of one skilled in the art that it would take an enormous amount of time that the off the shelf sensors that were available would not be able to process this signal in response there was a very conclusory statement from Dr. Dix the ATI expert which did not contest the essential underlying fact there was a conclusion by Dr. Dix but he didn't address the very specific points made in the Hessler affidavit so again the district court was confronted with a situation where there was no material facts and dispute about the question of whether it would require undue experimentation and the district court said in essence Dr. Dix doesn't even characterize the nature of the work that would be required and if we  you on enablement is there any reason to reach the written description issue I don't believe there is your honor I will say in candor to the district court the record is less than clear on that the record could be read to say that enablement doesn't cover claim 29 but I heard Mr. Baniak to say that that's not his position and the record is less than clear on that we believe if you if you reach if you reach the  it's less than clear on that point on enablement your honor the point I would direct the court's attention to of course is the cases we cited the Kiron case the AK Steele case the recently decided libel Florsheim case and what about the original proposition of law which is and I'll explain why it's not to the contrary which is cited in all the cases I just identified which is you have to enable the full scope of the claims in this case ATI sought a construction that included and was limited to genetic engineering genetically engineered RRT and genetically engineered RRT was in fact enabled it didn't have this sort of multiple scopes of the claim that we have here both mechanical and electronic thank you thank you Mr. Gallant that the claims are invalid for lack of written description and for lack of enablement our issue relates to non-infringement the claims were construed by the district court consistent with the supervisor case well you you had a motion for summary judgment that was denied yes your honor now normally the case goes on but here the patents were invalidated is this a final judgment this was a final judgment your motion was left was it held to be moot our motion was denied it was denied yes your honor which means the case theoretically could have gone on but is that nullified by the holding of the case it's affirmed we render our motion our cross appeal moot your honor we understand from the typewrite case your honor that our position should either be taken as a alternative grounds to affirm the judgment below or possibly as a cross appeal we but as judge lori mentioned you your case is still alive I mean assuming we were to reverse on the validity grounds all you've been denied is summary judgment of non infringement you're going to go on to a trial I assume that's correct your honor but in the typewrite case that same position was taken as an alternative   the judgment below and therefore if you reverse the district court as to non infringement for nissan north america and calisthenic campside the judgment below would then be modified so we understand that our position should be accepted either as I say a alternative ground to support the judgment or as a cross appeal that's why we're here the typewrite case I think supports our position and as I was saying the basis of our position is that the district court required that the sensor housing be capable of being mounted both in the side of the vehicle and in the door calisthenic campside sells sensors exclusively to nissan nissan uses some of those sensors inside impact sensing systems nissan vehicles never have a sensor in the door nissan vehicles have no position to mount such a sensor in the door the nissan system doesn't work with the sensor  door therefore our position is that we're consistent with patent that is to say we are inconsistent with a patent that requires a sensor in the door the district court misapplied the case law of this court including the high tech medical case and the striker v dabble case the district court denied our motion because ati had an expert modifier drilled holes in the door hung a sensor where no sensor could be positioned and that is incorrect according to the case law thank you mr feldhaus mr faniak has three minutes of rebuttal briefly with respect to what mr. feldhaus just said as i said at the outset intel i believe controls striker the case that he cites in the district court and reviewed carefully does not indicate a contrary result to the denial of the motion in this case is there experts testimony that this would require undue experimentation absolutely your honor and i think the district court did not read dixie's declaration fairly that goes to my point we're on summary judgment the judge should not be weighing these two declarations he should be looking for issues of material fact what do we see in the start of hensler's declaration he says he begins by saying that an electronic sensor may not have been available may not have been available at the time dix starts out saying they were available at the time and here's how someone would have easily easily been able to adapt it that is his declaration from start to finish hensler  any of these devices he didn't even know whether they existed at the time he looked at this from the standpoint of a commercial embodiment which cfmt says that's not the situation here and i think the district court went into that what we're also looking at is on the law itself you cannot and they cannot distinguish spectrophysics on the law itself we describe more means alright that is sufficient for purposes of fulfilling the enablement requirement you have to enable the entire scope of the claim if there is an electronic scope have you enabled it there's an electronic scope of the claim which we're dealing with only two dependent claims in this particular instance doesn't matter how many claims there are you have to enable the entire scope of the claim i have one means your honor we have enabled the scope of all of those claims i'm saying it's argumentative you're enabling a species you're enabling a species and claiming a genus i'm claiming a broad claim in claim one which encompasses many means i've disclosed electronic included electronic in that how have you enabled that judge lurie is correct you've enabled something broader than a single mechanical species covers i don't think you can distinguish spectrophysics since spectrophysics says that we have enabled the full scope of claim one by disclosing one means and we just explained all that in libel flashman didn't we you did discuss that in that case your honor and i think libel flashman does support our position for the very reasons that i'm saying here libel flashman dealt with the situation where you had this unclad version and the unclad version was in any way shape or form disclosed in the means plus function is a very significant aspect of this case we disclosed that going if i can continue what we did done with one sentence key fully loaded sentence i urge the court to read carefully what's in the background of the invention and the context in which these sensors are being discussed because they're being discussed with regard to crushed sensors they're being discussed with regard to sensors which are considered to be essential because that's one of the problems that was being faced by the applicants at the time and it's clear i think when you get through that that putting it in context the word essential is not essential in this particular case thank you thank you mr berniak the case will be taken